is 25-1964. I thought there were two oralists, was that right? Yes, Your Honor.  My understanding, Counselor, is that you want four minutes and you're reserving one for rebuttal? Yes, Your Honor. And your co-counsel will be doing the same? Yes, Your Honor. Okay. When you are ready, please.  Your Honors, and may it please the Court. I'm Fonda Shen, Certified Legal Intern of the Jerome and Frank Legal Services Organization, here on behalf of Mr. Reynaldo Davis. With the Court's permission, I will address the hearsay issue here, covered in Section 1 of our brief. My co-counsel, Ms. Gladstein, will address the two sentencing issues covered in Sections 2 and 3 of our brief.                And may I just ask, when you discuss the hearsay issue, will you also be addressing whether, regardless of whether it fits within the hearsay exception, it satisfies the good cause standard for allowing this testimony to come in, even without, say, the victim testifying? You'll address that, too? Yes, Your Honor. I will be addressing whether the four hearsay statements here were properly admitted. Okay. In general. Yes. Thank you, Your Honor. Mr. Davis was sentenced to 18 months in BOP custody without the constitutional protections of a trial. Your four minutes are going to go very fast, Counselor. Why don't you tell me first about the Rule 32.1 argument? We have one procedural and one substantive. Do we have any in-circuit case law as to the procedural argument that the District Court had to tick through each factor in their analysis? Yes, Your Honor. In the Circuit, the Circuit's precedents have clearly stated, both under Morrissey v. Brewer under the Supreme Court and under 32.1 in the notes of 32.1, that the District Court has to make specific findings of good cause. And under United States v. Williams, which is a Second Circuit case, such good cause must be found under a balancing test. This balancing test was not conducted by the court below in his case, nor did he find any of the required facts to conduct such a balancing test. What kind of facts were required in your view? There are three factors under United States v. Williams, Your Honor. The strength and the strength of the government's proffered reasons for not producing the witness and the reliability of the evidence can outweigh the defendant's interest in confrontation. In this court's precedent — The government takes the position that the witness, the victim, was not produced because of fear. Do you want to tell us why you don't think that's so obvious that we could affirm without sending it back? Yes, Your Honor. The court below did not find that — did not credit the government's proffered reason that the witness, in fact, would not have testified out of fear of Mr. Davis and what is relevant under the Williams test is whether or not — not whether the witness may have been afraid, and the record here does not support that either, but specifically whether she would have been afraid to testify. And the record here simply doesn't support that. The witness cooperated with law enforcement and probation on multiple instances in this case and has called law enforcement on multiple occasions in the past. But didn't she stop responding and change her number? Your Honor, yes, the witness did — did fail to respond to three telephone calls by the government, and her line was disconnected, I believe, by the time the government called her a fourth time or the third time. But the government had two readily available means through which to contact her. They had her home address. They had the ability to subpoena her. And the government did not take either of these two readily available means to try to have this witness testify. And under this Court's precedence, that simply is not enough. In earlier cases where the district — where this Court has upheld admissions of such hearsay evidence, there's either been an explicit statement of fear from the witness or an explicit statement that she would not testify. Neither of those occurred here. And, in fact, the witness had, in fact, provided probation with information during her five calls with probation before her line had been disconnected and they were unable — and before she had not picked up the phone. And during her conversation with law enforcement, she was equally cooperative. She did not indicate that she had any fear of Mr. Davis or that she would not testify. Well, she said she didn't want to report the assault. She said that she just wanted to get past it. Why isn't that enough? So under this Court's case, United States v. Bernadelle, this Court held that this classic pattern of domestic violence victims was not enough. In prior cases in which the complaining witness had been found to have refused to testify or had been afraid to testify, they had made — 26 domestic violence incidents? Yes. But none of those allegations led to convictions, Your Honor. And under this Court's precedent, United States v. JUA, charges that did not actually result in convictions cannot be considered evidence for purposes of imposing criminal punishment. Right. But that's not — what about an indicator that she would have been reasonable to not — to be fearful? It may have — Or even fearful just not want to deal, like to not have enough faith in the system to believe that it was going to be matter — that it was going to matter, it was going to be worth it. Right. That may be possible, Your Honor, but two points on that. First, what's relevant under the balancing test is not whether an individual may have been reasonably afraid under those circumstances, but whether this witness was so afraid of the defendant that she would not have testified. That was not the case here, and the record does not show that. And second, the district court did not credit any of these allegations against the defendant in their decision to admit the hearsay statement here. Well, it didn't speak to them at all. It's not that it discredited them, right? Correct, Your Honor. Let me ask you this. If we were to send it back to the district court and the district court were to say, I've reviewed this record and I think she would be afraid to testify, we would view that deferentially, right? Because it would be a finding of fact? Yes, Your Honor, but this — Okay. And we would also only require the district court to find it by a preponderance? Is that right? Yes, Your Honor. Okay. Is it your position that if we were to send it back, the district court, as a matter of law, couldn't find fear on this record? Or is it just that you're saying that we can't say that fear is so clearly established that we can assume that's what the district court did? Which are you saying? Yes, the first, Your Honor. Based on the factual level. You're saying that as a matter of law, you couldn't find fear on this record? You could not find fear that — you could not find an indication that the witness would have refused to testify out of fear. Out of fear. Which was the relevance issue under United States v. Williams, Your Honor.  Good. Thank you. May it please the Court. Gila Gostin, Certified Legal Intern, on behalf of Appellant Rinaldo Davis. The district court wanted Mr. Davis to pay the piper for what he had done. In doing so, the district court erred in two ways. First, the district court imposed a sentence using impermissible retributive factors. Second, the district court imposed a suspicionless, deeply intrusive computer and internet monitoring program that cannot be upheld based on this court's precedent nor the underlying statute 3583D. On your first point, you were quoting the district court paying the piper. Okay. I appreciate that. And your argument is that paid the piper meant be punished for the alleged rape rather than pay the piper for betraying the court's trust in allowing him to be on supervision. Yes, Your Honor. Why would we assume the former? Your Honor. We generally assume that district courts know the law and are following the law. I mean, if it was you're going to pay the piper for this violation of the court's trust, why would that be impermissible? Your Honor, we have two points on this. I think the first, the language here, you're going to pay the piper for what you have done. What you've done is backward-looking and is important to take into account here. It is not saying you're going to pay the piper for deterrence. You're going to pay the piper to protect the public, but rather you're going to pay the piper for what you've done. And so I think that's a clear indication that this was about— Well, that goes to your argument that you can't even consider the betrayal of trust, which this court has generally allowed, and now you're saying that we should extend the Supreme Court decision to say that you can't consider the fact that there was a violation and punish the violation. Yes, Your Honor. And then to the second point, on Appendix Page 219, the prosecutor does mention breach of trust, and then the defense objects to that, and then the district court goes on to reference lack of remorse. There's no discussion by the district court itself about breach of trust here. And then to your second part of your question, in our reply brief on Page 26, footnote 4, we mention that sanctioning a breach of trust would not be a valid consideration at revocation because doing so imports the very retributive aims that the statutory language of 3583e3, as interpreted by Asteris, excludes. May I ask you, if we are not persuaded by your Asteris argument, what other challenge would you have to this position of this penalty if we are not persuaded that Asteris applies to breaches of trust? Your Honor, we would still ask this court to vacate the computer and Internet monitoring program because that program was not narrowly tailored based on the record before the district court. Now, the government argues with respect to that that it was permissible, at least on the grounds that the phone was used after the alleged rape to contact the victim. Why shouldn't we be persuaded by that? Your Honor, this court has repeatedly held that when a computer monitoring program is involved, the condition needs to be narrowly tailored and robustly supported. Though there was mention of a cell phone after the fact, those text messages were primarily about their shared children, and there was not a no-contact order in place at that time. So it was not impermissible for those text messages to be used. There is also some discussion about whether she was violated or not, what he intended or not. So there's some discussion of the incident that is alleged as rape, isn't there? That's true, Your Honor, and still this condition is suspicionless, and it makes it so probation can monitor everything Mr. Davis does on his devices, every keystroke, every photo, every piece of data, and that is far too broad to be supported on this record. Okay. So I want to talk a bit about estetis in two different ways. I mean, would you agree that you're asking us to extend estetis beyond what the Supreme Court did? I mean, the Supreme Court clearly said that you couldn't look at the underlying offense, but my understanding is it's still an open area of law as to whether or not it can be about a violation of supervised release context. Yes, Your Honor, but we think that this is the best reading of this Court's precedent as well as Supreme Court precedent. In Johnson, the Supreme Court held that the underlying offense must be linked to the violation conduct or else there would be constitutional concerns, such as a defendant not getting a jury beyond a reasonable doubt. And the purpose of supervised release is to rehabilitate. And so through that, if you're punishing for the violation of conduct itself, it raises these constitutional concerns. Well, I'm just not sure what we should do about the fact that the Supreme Court very explicitly chose not to take the step that you're asking us to take now. But I also wanted to ask something else. I realize that you raised the aesthetics issue in your precedent and claim submission, but I also read aesthetics to say that you need to raise any objection about the retributive sentencing with the district court in the moment that it happens. Otherwise, the review is for plain error. Would you tell me? I mean, am I right in reading aesthetics that way? Your Honor, it is true. No, Your Honor, we believe that this should be reviewed on abuse of discretion. It is true that Asteris does talk about the stray remarks that can happen during a proceeding. But defense below on appendix page 196 in the sentencing letter stated, the court should not rely on impermissible, backward-looking retributive factors. No, I mean, I understand that you raised it before the sentencing. The question is whether or not Asteris, rightly or wrongly, requires it to be raised at the moment that it happens. Otherwise, our review is for plain error. So tell me why a reading of Asteris that way is wrong. Your Honor, I think the reason why that would be incorrect is in looking at Federal Criminal Procedure Rule 51, it states that if a litigant tells the court what it seeks, that's enough to preserve the issue. And so here, too, Mr. Davis' counsel below told the court that it sought a forward-looking time-served sentence. So are you saying that Asteris did not? I guess there's two ways you can argue this. One of them is Asteris doesn't say that. And, again, I think one reading of it is that if you don't object in the moment, you're under plain error review. You're instead saying, irrespective of what Asteris says, the rules are what govern? Yes, I think the rules are what govern here. May I ask? Sorry, go ahead. No, no, please. Even if Asteris requires it in the moment, there's a robust discussion at the sentencing hearing by name about Asteris. Are you conceding that that was not an objection in the moment to the retributive factors being part and parcel of the sentencing? We're not conceding that that was not an objection, Your Honor. But when Asteris was raised, it was spoken about in terms of the underlying offense in most of the record. And so we're saying that we preserved both that retributive factors should not be looked at in the underlying offense and also the violation conduct by the sentencing letter as well. I have a question for you as to how far we want to guide district judges about this. If his violation had been that he left the district without notifying his probation officer, he went upstate to visit his children, whatever, versus his violation is he went upstate and he raped a woman, you don't think the district court gets to consider the differences in the betrayal of trust as reflected in those two different violations? Your Honor, of course the district court can look at the nature and circumstances of the offense. That is in 3553A1, and Congress has said that that's a permissible factor. They can look at it in terms of rehabilitation, incapacitation, and deterrence, and that is what Congress has allowed. But they cannot look backward and look at it to additionally punish or impose just punishment, which is what the district court did here. Okay. Thank you. Thank you. Good morning, and may it please the Court. My name is Vincent Ciappini. I am an assistant United States attorney in the Eastern District of New York. I represented the government in the district court. The court should reject all three of the defendant's challenges and affirm the district court's judgment in its entirety. First, with respect to the admission of the hearsay statements, the district court did not abuse its discretion at the hearing because good cause existed under Rule 32.1B2C, and also a hearsay exception applied with respect to one of the statements, the 911 call. Okay. Let's talk about the 911 call then. Yes. Because I think there are four layers of hearsay, right? S.S. allegedly tells her sister about the rape, who allegedly tells S.S.'s daughter, who allegedly tells her boyfriend. The boyfriend then makes the 911 call. Is that right? That's correct, Your Honor. So none of those declarants, and there's no reason to think that the boyfriend, the daughter, or the sister of S.S. were in fear. So none of those declarants are made available. So we're on quadruple hearsay by my read, and none of that's addressed by the district court. So to the extent that even if you think the boyfriend could have made an excited utterance about hearing thirdhand about something, how is the analysis there at all adequate? It's relative to the very limited purpose, Your Honor, for which that 911 call was offered, which was simply to corroborate the fact that the victim disclosed this to a very limited number of people, namely one, her sister. But we don't know that's in the statute. How do you corroborate that? It corroborates that because of the multiple sources of hearsay through which the boyfriend learned of it. And it's also important just to know why. How is any of that coming in? I mean, the girlfriend, the daughter, let's hypothesize, could have had animosity toward the defendant, and the allegation could have started and ended with her. So I don't see how this corroborates the victim having told anybody that she was raped. When viewed in conjunction with the body-worn camera, Your Honor, it does because in the body-worn camera the victim says that she told her sister, who then in turn told her daughter, and that she did not want to tell anyone else. And your proof that the sister told the daughter is what? Is the body-worn camera. Well, it's the inference from the fact that the 911 caller is the daughter's boyfriend. Well, we don't know that, do we? I mean, I'm really surprised that you're defending this as coming within the excited utterance because I'll ask you another question. What's the event that would trigger an excited utterance by the declarant, aya, that is the boyfriend? What's the unusual event that would make someone so excited that the law would no longer think that they had the time or the motivation to lie? His learning of the rape allegation. So anybody who hears that someone has been raped is then in an excited state. In this particular case, yes, Your Honor. Listening to the call and the district court's finding, which was reviewed for clear error, yes, this declarant was. The district court made a finding that he was in an excited state? It cited to the government's brief and also the relevant explicit hearsay. I understand you argued it, but I think that one of the concerns, as with some of the other aspects, is that the district court didn't tell us what he was finding and what he was admitting it for. We just assume that it did it for the reasons you urged in your brief, right? Yes, Your Honor. With the consistent citations to the relevant brief on which the district court was relying, I think it's a reasonable inference that he was relying upon the arguments advanced by the government. Well, I know you want to argue other points, which I think might be a good course because this one's problematic. I would like to say, with respect to this 911 call, that any error with admission of the 911 call is certainly a harmless error. The government never advocated for the truth of the rape, and the district court's decision did not cite it at all for the truth of the rape, only for the reason that the police officer responded to the McDonald's parking lot where he encountered the victim and then recorded the body-worn camera footage. Well, one of the things I'm wondering is how we can conduct appellate review on such a sparse record. Well, Your Honor, there is actually a significant, robust record in the submissions, as well as the government's proper reasons for the absence, as well as the testimony received at the hearing about the declarant statement. In the absence of a finding of fact, though, with respect to the victim's fear assertion that you're relying on here, how does this record so convincingly indicate that, rather than she just didn't want to get him in trouble or have any disputes? I mean, this is not a stranger raping her. This is a quasi-family relationship, and we do see these from time to time where victims do not want to accuse a family member. How do we know that? I mean, the district judge made a finding. We'd be obliged to defer to it, but we don't have no finding here. Well, Your Honor, the standard isn't necessarily under United States v. Figueroa who rejected the idea that we have to have an express finding of subjective fear by the declarant. In the United States v. Carthan as well as the United States v. Figueroa, this Court laid out the standard that it's when a defendant has a history of conduct that makes reprisal against the declarant a possibility, which is also similarly stated in Figueroa as whether it was reasonable for the district court to conclude that the declarant faced a realistic possibility of reprisal if she testified. I wasn't clear, obviously. I'm not suggesting to you anyway that the district court might not reasonably have found fear. We'll leave that to another day. But in the absence of a finding that it was fear rather than, you know, just not wanting to exacerbate a domestic situation where they had children and all, why should we assume the former and not make the district court tell us one way or the other what it was? Your Honor, as previously said before, I would submit that with the citations to the relevant pages of the government's brief throughout and the extensive argument on these points, that the district court was endorsing those findings. However, even if the court does not believe that it did as a procedural point, I do think it is self-evident in the record and that good cause did exist. I mean, these are very unique facts here. This is a situation where you have 26 domestic reports from this declarant against this defendant, and in addition to the conduct charged here of a violent rape, which there was support for through the evidence that ultimately came out at the hearing, you also have, and of those 26 incidents, this is really extreme conduct we're talking about here. There are the 12 highlighted in my brief that there's two instances where he attacked her, multiple instances where he kicked in her door, multiple instances where he's throwing objects through her window, and then just, and then, you know, only months before this hearing, he raped her in her own home while their 7-year-old son slept in the room next door, the next room, and she was trying not to wake him. I think on these unique facts, it's reasonable for the district court to infer, based on the government's arguments that had proffered and the court cited, and also for this Court to infer from this record that it's self-evident why the declarant in this case faced a realistic threat of reprisal with this. Justice's counsel suggested that one way of having a clearer picture of this might have been if police had gone to her home or officers had gone to her home and found out whether she was willing to testify or not. Do you want to respond to that? Yes, Your Honor. I think here there's an extremely lengthy record of her non-willingness to cooperate. On the day of, even though she had suffered this incredibly serious attack, she didn't decide to call the police. She didn't want to involve the police. Someone else called the police, and she was found in this McDonald's parking lot, and she answered questions in response. I understand that those arguments tilt your way, and the argument to the contrary is she ultimately gave a video statement, and then yet another statement after that, and so the argument is that that makes it difficult for us to reach any conclusions. I think that vastly overstates her cooperation to speak to police for a handful of minutes when they find you in a parking lot, and then to speak one week later. She waited for them, right? They didn't surprise her in the parking lot, did they? It's not entirely clear from the record exactly what she expected at that point. She expected, I think it was clear that she expected that the police would come and meet her, that that's where she would wait for them. Isn't that what the 911 call suggests? That he says, hey, we're here, she's at this McDonald's, and, I mean, fast or not food, you're not hanging out normally in the McDonald's parking lot for half an hour if you're not waiting for someone to come and meet you. Well, she said she was, I believe my recollection of the call is that he was, she said the caller said that she was at the parking lot, but I don't know if it's clear that she's at the parking lot waiting for the police to arrive. But from the moment she's already at the parking lot, it's just by chance she happens to still be there, and they sneak up on her and surprise her and get her to make a statement. That's your thought about how that went down? I don't know if they had to sneak up on her or how many minutes she is at the parking lot. You described it as her being found in the parking lot. But let me ask you more to the point. I think this is what Judge Raju is asking. Your brief in the district court says the government is making good-faith efforts to secure, you call her the victim, I'm going to call her SS, SS' testimony. What were those good-faith efforts other than trying to call the number that was no longer working? I think that following that, so there's the one, the last time, a week after the attack, the probation officer, Steve Stern, receives a handful of screenshots. But there were repeated attempts to contact. I'm going to ask you the direct question again. It says here you no longer have a current phone number, but you're, quote, making good-faith efforts to secure her testimony. What were the efforts the government made? The government, only by telephone, Your Honor. So even though this brief says to the district court that you no longer have a phone number, but uses the current present tense to say is making good-faith efforts, there actually were no ongoing efforts. There were no efforts beyond the telephone calls, Your Honor. But by the time of this brief, you already had said you don't have a phone number. So that meant there are no efforts. Your Honor, I was speaking with the probation officer at the time about locating her. We did not go to her home. I'm not aware of any other efforts that he may have made. But you did not make any other efforts once the phone number stopped working other than asking probation whether he had heard from her? I can't recall any other efforts, Your Honor. Okay. But I would like to space that there are a variety of things that happened in between that indicated her lack of willingness to cooperate with this that I think are extremely important for understanding why there was good cause for her absence. Also, there was a scheduled call with her on September 9th. She declined to participate in that call. And she also, the probation officer attempted to call her on October 18th, and she refused to provide text messages that he requested following that. He inquired again in January asking for the text messages. She refused to provide them. Is it possible that was because she didn't feel like her version of the story would hold up? That's one explanation, that someone decides not to cooperate with police after making an informal complaint, right? That is a possible explanation, but I think in the light of all of the facts here, I think the court was entitled to reasonably conclude, and I think it's self-evident from the record here. Maybe the district court was entitled to conclude it, but as Judge Radji points out, the district court did not. Your Honor, I respectfully disagree because I do believe that it can be inferred from the record that he had cited at every point. He's citing the government's, the relevant pages from the government's brief where these arguments were made. And there is no requirement that the declarant be completely unreachable for there to be good cause for her not to be called. And I would cite to the cases of Jones and Lloyd, this case, which were in 2002 and 2019, where each time the government chose not to call the declarants and the admission of that testimony was upheld. Compared to Lloyd, the government chose not to call the declarant because the declarant had not chosen to cooperate in the State. And essentially that is the same thing that happened here. There was no prosecution in the State because the declarant had no interest in pressing charges in the State. I know that government has used its time, but may we ask them to address just quickly the retributive sentencing argument?  Yes, Your Honor. The district court did not rely on any impermissible factor in sentencing the defendant. And this Court ought to review. I know, but your adversary is asking us to extend a steris to this situation Do we have a problem with the district court's actions if a steris were to apply here? No, I don't believe so. Because I don't think the Court needs to even reach the issue of whether a steris needs to be applied to violation conduct here. At sentencing, the government did not make any distinction between applying a steris for the underlying offense or the violation conduct. The government conservatively assumed not to consider it at all. And there's no indication that the Court considered retribution with respect to either the underlying offense or the violation conduct. The statement that Ms. Davis points to is this pay the piper statement. Pay the piper, as Mr. Davis' reply brief says, means face the consequences. And Ms. Davis asked me to make the extra leap that any consequence must be only for the forbidden purpose of retribution, which I don't think is warranted at all. I don't think there should be any dispute that in revoking a term of supervised release, a defendant is facing consequences, and that's okay. That's what's permitted by the law for the defendant to face consequences. There may be certain purposes for which the district court cannot make him face those consequences, but the simple fact of facing the consequences alone is not the problem. There was also remarks about lack of remorse. Is there any way in which paying the piper could be tied to lack of remorse? I'm just trying to figure out what it could be if not retributive. Well, I think pay the piper could simply mean face the consequences in terms of also the breach of the court's trust. And I do want to make two quick points on the breach of the court's trust in response to my friend's comments previously. The district court, contrary to the reply brief and what Ms. Davis' counsel said here, the district court did invoke that. On page 219 of the appendix, the district court said, we're talking about violations of trust at sentencing. And also, the – this court has already addressed the issue of whether the court – of whether a district court can consider breach of trust at sentencing post desteris, and it has ruled that it can. In the United States v. Fernandez case that Mr. Davis cites repeatedly in his reply brief, the – that is a post desteris case, and it specifically says that the court can consider violations of trust at sentencing. And in fact, it cites desteris for that point. May I be certain that I understand the government on this? With respect to the 3553A factors, is it your position that when the statute speaks of offense, it is only speaking of the offense of conviction, never the conduct that is the violation? That is a position that the government took at the Supreme Court. I'm not aware of the government changing its position on that. My point here is that I don't think the district court needs to come anywhere close to that issue because I don't think that the district court sentence with respect to retribution on either the violation of or the underlying offense, and also this – and I think that that is even – made even more obvious by the fact that we're on plain error review here. Well, I'm referring to the offense of initial conviction, which was drug trafficking, right? Yes. In this court, when you – when you're speaking of the nature and circumstances of the offense 3553A1, which one can consider on a supervised release violation, is that correct? Yes. Is the offense you're talking about or that you would say the judge can consider the underlying offense narcotics trafficking or the alleged violation of criminal law, the rape? You know, that particular question has not been addressed in our briefs. I understand your question. I think consistent with the position that the government took at the Supreme Court that the offense there should only apply to the underlying offense, that yes, that would, as a matter of consistency, only apply to the underlying offense. But the nature and characteristics of the – the history and characteristics, excuse me, of the defendant, of course, are regardless of the – Well, let's assume we don't agree with you in that for purposes of a violation of supervision, we think offense means the offense being alleged to have been the violation. How – when would it be permissible for the court to consider the nature and circumstances of the violation conduct but not to have it reflect the seriousness, not to have any sentence reflect the seriousness of the violation conduct? I'm having a little trouble understanding what – how courts would distinguish those two. Well, Your Honor, I think that sort of disentangling all of these is very complicated, which is why Asterios had the – had that entire section on how appellate review should work in this case and how these issues should be raised in the district court so the district court could articulate exactly what it is doing. So, for example, I mean, I think that the court could still consider this – they'd have to consider something about the seriousness of the offense to talk – to consider to what extent it's a breach of the court's trust. Well, using the hypothetical I gave to your colleague on the other side of one person violates their supervised release after committing a drug trafficking crime by going out of the district without notifying the probation officer for a family birthday party. Another person goes out of state without notifying his probation officer and rapes someone. What can a district court consider about the seriousness of those two violations, anything or not, not at all? I think that they could consider – I think that they could consider the seriousness And this, I think, is consistent with the approach that the sentencing guidelines have always taken on this, Chapter 7, Part A, which is that you can consider the extent to which it's a breach of the court's trust, which does require considering what the violation conduct is. You have to be able to look at what the violation conduct is. And obviously that gets into you could – these things could be, you know, opposite sides of the same coin and someone could say, well, isn't that punishment? And that's exactly why Asteris had this very cautious structure of how objections need to be raised so that the court would be able to articulate exactly why it's imposing the sentence it's imposing. Thank you. Did you want to – and then the CIMP? Yes, just very briefly, unless you have other questions. I do believe this was narrowly tailored and robustly supported. The district court made an individualized assessment in this case by noting that the – noting that the defendant used a telephone to contact the victim after the violation and that he – and that he – and because he used that to contact the – and also the defense conflict, excuse me, recognized that it would be relevant as an enforcement mechanism for the third condition of having no direct contact with the individual. That's the appendix of 237. And here it's all electronic devices. Did he have any other electronic devices? At the time, the only finding – at the time, there was only the cell phone discussed. Why would there be a need to monitor, say, if he got a laptop or a computer of some kind? Because he could also potentially pursue the victim through those means as well, and that's something that the probation, as the eyes and ears for the court, wants to monitor. Find her on social media, for example, and attempt to contact her through that. On social media? I don't know, but, I mean, during – even if she wasn't on social media at the time. These are questions that, in terms of narrow tailoring, isn't there at least some basis to think that maybe this inquiry should be made? Yes, Your Honor, but I think that there's also – Because you're saying that it was reasonable and narrowly tailored for the district court to impose the condition on devices he still did not have because of possible communications that we don't know could have been achieved because we don't know if she's on social media, we don't know if she has an email address. I mean, I'm a little concerned as to the adequacy of the inquiry here, given the sweep of the imposition. You want to help me out? Yes, Your Honor. I think that one of the points I consider, first off, is the nature of when you're imposing this condition. It's necessarily prospective. Mr. Davis was being sentenced to 18 months, and then the supervised release was not going to convince – well, at this point he'd already served several months, but at least more than a year in the future. So even any findings about what devices he had while he's incarcerated with more than a year to go in BOP custody wouldn't be terribly indicative of what monitoring he might need, which is why the probation has the ability to put it on any one of his devices. And similarly, whether the victim in this case has social media as of the date of the sentencing is different from whether she might have sent social media or another way to be contacted during those two years of supervised release following his release from custody. And on the narrative, I'd point out that here there is a reasonable suspicion condition on all searches of his geolocation data and the devices themselves. In cases in the past where this Court has thrown out monitoring conditions, there was no such reasonable suspicion. But we have also sometimes thrown out monitoring conditions. We haven't always approved monitoring conditions, even where they had a reasonable suspicion requirement, right? Well, I would point to the United States v. Salazar, where the Court said that they've generally upheld monitoring conditions authorizing probation to search release these devices only when an electronic program detects suspicious activity. And here there is a provision requiring reasonable suspicion to actually access the device. And also, there is nothing in the record. My friend said that this was the provision to monitor every keystroke of his phone. There is nothing in the record that says that. It does say you can monitor all data. Can you tell me where you think is the basis for it not doing that? Like, where would we find that? I mean, if you were self-limiting it, I'm sure that that would be something that would be of good news to Mr. Davis. But where can we rely on the fact that it is not as broad as your opposing counsel says? Your Honor, there is nothing in the record that exactly specifies what the monitoring program encompasses. And if we use the United States v. Verbell, this Court received a sealed letter describing how the monitoring program worked. And it noted that the letter was kept under seal because revealing too many details of how the monitoring program worked could assist releasees in evading the monitoring. But I would note that there is nothing in the record that says that it's every keystroke. And my understanding is that that is not the case. Obviously, that's also outside the record from my perspective. But I would point out that the United States v. Verbell, I think, is a helpful case in that it recognizes that these monitoring programs are necessarily going to look at lots of data. That's the only way they can work. I know I have it here somewhere, and I'm not locating it right away. When he contacted her by phone, did the supervising authorities know that he had that phone or even that was not— he had not disclosed that phone? I'm trying to remember the facts. That phone number was not on a number that had been disclosed to probation. And defense counsel points out correctly that he was not obligated by the terms of his supervised release to provide every number he has to probation. At the same time, I do think it's a relevant fact for the court to consider that this is a person who has multiple devices, so it's something for the court to consider about how necessary the condition is in monitoring and prospectively. Can you point me to where you would argue that the district court considered a less restrictive alternative? I'm sorry, you can hear the last part of the question. Where the district court considered a less restrictive alternative? Oh, thanks. Where the district court did not expressly consider a less restrictive alternative, I will say in past cases of this court, a less restrictive alternative than monitoring with reasonable suspicion, monitoring and then requiring reasonable suspicion to look at the devices themselves, has been— Can you—then maybe you can help me. Why isn't the electronic search condition that he was subject to separate and apart from the CIMP not enough to meet whatever legitimate purposes the government had? I think it's this defendant's extreme record of noncompliance. All of these violations, which the court found in its opinion, which aren't—I know we're focused on the rape charge here, which is incredibly serious, happened less than a year out of his release from custody and being on supervised release, but also he was found to be outside of the district and the declarant mentioned that he's routinely outside the district and not an issue at this appeal, but in the record— No, a less restrictive alternative. I was very interested in the outside-of-the-district question. Wouldn't a less restrictive alternative have been to put an ankle monitor on him than to look at his phone and be able to access everything that a phone included? Was the district court obligated to consider that? Was the government obligated to suggest it? Your Honor, I believe that an ankle monitor might be actually more restrictive than the monitoring condition. For example, here, to just find out where he has been historically, the government requires reasonable suspicion under this condition, whereas an ankle monitor would allow the government to monitor where he is at all times. And also, I think that many individuals might find that wearing an ankle monitor is an extremely restrictive condition. But you don't see that the district court didn't consider it? The district court did not consider wearing an ankle monitor, however— Any other restrictive alternative explicitly? No, but I'll also point that no other less restrictive alternative was proposed. And I'd cite to, again, United States v. Rubel, where the court said that they cannot conclude the district court exceeded the permissible bounds of its discretion in imposing the monitoring condition, particularly where Rubel did not propose any narrow alternatives in that court. Thank you so much. Thank you. May it please the Court, I'd like to make just three quick statements. First, as Your Honors all noted, the district court did not make any findings on any of the predicate facts, including the domestic violence allegations below. And you asked Judge Raji whether the record was sufficient as a matter of law. It is, because of the evidence of cooperation by the complaining witness here and the fact that she had stated to probation that she had found law enforcement to be ineffective, and this was simply a low priority for her. So it's sufficient to allow a finding of fear or insufficient to allow a finding of fear? It's sufficient for the court to make a finding that the complaining witness here was not afraid, Your Honor. I understand that, but for the government to prevail, the court would have to find that there was a finding of fear. So could it have made that finding, too? If on remand, the government wanted to provide the court with additional information, the court— That's further evidence. On this record, are you arguing that the district court, if we remand it, cannot find fear? That's correct. The district court cannot find fear based on the record before it at this moment. And second, just a quick factual correction, Your Honors. On September 9th, when the complaining witness was contacted by probation, it is true that she did not pick up the first time, but she did in fact call probation back to tell them that she was not able to talk at that moment because she was busy with her children. And third, to discuss Judge Merriam's question, yes, here, had Mr. Davis had the opportunity to cross-examine the complaining witness here, there might have been many lines of cross-examination that he could have pursued, given that the government's entire case rose and fell on the hearsay statements here. He could have questioned her motivations, her memory, and her memory of the specific circumstances here and whether or not they fit the New York penal law, the New York rape statute or the New York sexual misconduct statute. I'm going to give you a minute to wrap up. Okay. And just a final point. My friend mentioned Peguero and Carson. I just wanted to distinguish those cases. In those cases, there were either explicit statements of fear or explicit statements that the witness refused to testify. And in addition, the reliability of the statements there were much, much higher here where there was no collaboration by any independent evidence at all. Thank you, Your Honor. Thank you. I have three quick points as well. First, the Kim program is not narrowly tailored. There was not a consideration of the least intrusive means, and that is enough to vacate the condition here. Second, Asteris requires an objection to make the district court aware, and Davis did that in his sentencing letter. And as Judge Miriam points out, Davis repeatedly talked about Asteris during  It was not mentioned beforehand, but not after. Is that right? I mean, there's a whole discussion about how we should understand Asteris, and people are arguing back and forth about whether or not the Supreme Court extended it to violations of supervised release versus just underlying offenses and whether we were on the losing side of the circuit split and the like. But nothing, Asteris was not mentioned after the Piper comments. Is that correct? That's correct, Your Honor. But my third and last point that I wanted to say is that our friend on the other side talked about how the district court needs to consider the consequences. We are not saying that a district court cannot consider consequences. We're saying that it cannot consider retributive, backward-looking factors, and those two things are distinct. As I mentioned before, you can look at the nature and circumstances of the offense if it goes to rehabilitation, incapacitation, or deterrence. And so for that reason, we ask that this court vacate and remand. Thank you. Before you sit down, Counselor, let me ask you a quick question about mootness. So given my past various careers in the criminal justice system, I'm a big fan of the BOP website, and I check it all the time. Last time I checked, Mr. Davis was due for release April 18th. As of right now, it says April 3rd. It's been my recent experience that those dates get shorter and shorter, which is great for most defendants, I'm sure, but it does mean we have 31 days before I think that not the CIMP condition, but your retributive factors argument becomes moot. Is that right? So unless we can get something out on that within 31 days or less, because he's not in custody now, right, he's at the reentry center, but he's at least under BOP supervision until at longest at this point, unless he screws up, April 3rd? Your Honor, this argument is not moot. Well, after April 3rd, once he's released, won't it be moot? Go ahead and take a second and consult on that. It's okay. Your Honor, I apologize for the switch. No, our position is that none of the claims would be moot here because under United States v. Chestnut, as long as the chance of the district court shortening the period of supervised release, which is for two years here, is not remote or speculative. All of the claims remain live. Okay. And there's some reason to believe that's the case here? Yes, Your Honor. The district court below imposed two years of supervised release, which was less than the maximum he could have, which was life, and was also less than the sentencing court earlier in the original offense. And that leads you to believe that he would give even less? Yes, Your Honor, because it indicates that the district court was not intent on imposing the longest possible length of supervised release for a client. Okay. Thank you, Your Honor. Thank you. This was very helpfully argued. And that is the last matter on our appeals argument.